**Michael WILSON, Plaintiff,**

v.

**GLOBE SPECIALTY PRODUCTS, INC., Globe Newspaper Co., Globe Specialty Product/Globe Newspaper Co. Employee Disability Plan, and The Prudential Insurance Co. of America, Defendants.**

No. Civ.A. 99–12148–JLT.

United States District Court,
D. Massachusetts.

Sept. 29, 2000.

Susan D. Fendell, Frank J. Laski, Mental Health Legal Advisors Committee, Boston, MA, Paul M. Stein, Malkasian, Hicinbothem & Mollica, PA, Framingham, MA, for Michael Wilson, plaintiff.

Scott C. Moriearty, Bingham, Dana & Gould, Boston, MA, Mark W. Batten, Bingham Dana LLP, Boston, MA, for Globe Specialty Products, Inc., defendant.

Elizabeth Graham, Edward P. O'Leary, Fitzhugh & Associates, Boston, MA, for The Prudential Insurance Company of America, defendant.

Jane K. Alper, Disability Law Center, Boston, MA, for Disability Law Center, interested party.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Michael Wilson sues his former employer, Globe Specialty Products ("GSP"); his employee disability plan, Globe Specialty Products/Globe Newspaper Co. Employee Disability Plan ("the Plan"); and the Plan's administrator, The Prudential Insurance Company of America ("Prudential"). Wilson alleges that by limiting his mental-disability benefits to twenty-four months, Defendants violated the Americans with Disability Act ("ADA"), 42 U.S.C. §§ 12111–12189, and the Employment Retirement Income Securities Act ("ERISA"), 29 U.S.C. §§ 1001–1461. Before the court are Defendants' Motions to Dismiss.

## BACKGROUND

While employed at GSP, Wilson enrolled in the company's disability-insurance plan. Although Wilson was eligible for both mental and physical-disability benefits under the Plan, the two disabilities were treated differently. The Plan provided that physical-disability benefits were available to employees for the length of the disability or until retirement age, but that mental-disability benefits were limited to twenty-four months.

In August 1995, Wilson was hospitalized for severe depression, and he received disability benefits as a result. His benefits, however, terminated on August 8, 1997 based on Wilson's mental-disability classification.

During this period, Wilson consulted a Massachusetts Rehabilitation Commission ("MRC") counselor to seek rehabilitation services. He subsequently requested that Prudential pay his rehabilitation expenses. Although Prudential declined, it did not notify Wilson directly, but rather contacted his MRC counselor regarding the request's denial

On March 13, 1998, Wilson filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming that the Plan unlawfully discriminated between physical and mental disabilities. The EEOC concluded that the Plan was discriminatory, and notified him of his right to sue.

Wilson sued Defendants in federal court, alleging six counts: (1) ADA Title I violation by GSP and the Plan for inter-disability discrimination in its insurance policy; (2) ADA Title III violation by Prudential for limiting his disability benefits based on

a discriminatory insurance policy; (3) ADA Title III violation by Prudential for refusing, based on a discriminatory insurance policy, to pay his rehabilitation expenses; (4) ERISA violation by Prudential for failing to consider all pertinent information when refusing to pay his rehabilitation expenses; (5) ERISA violation by Defendants for breach of fiduciary duty; and (6) ERISA violation by Prudential for failing to notify Wilson that his payment request for rehabilitation expenses was denied.

## DISCUSSION

In furtherance of their Motions to Dismiss, Defendants argue that Count I is time-barred, that Counts II through V fail to state a claim upon which relief can be granted, and that Count VI must be dismissed for failure to exhaust administrative remedies.

### A. Statute of Limitations

Defendants contend that Wilson's ADA Title I claim is time-barred. A plaintiff claiming an ADA Title I violation in Massachusetts must file a charge of discrimination with the EEOC within three-hundred days of the date that his or her cause of action accrued. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e–5(e)(1); *Lawton v. State Mutual Life Assurance Co.*, 101 F.3d 218 (1st Cir.1996) ("Massachusetts is a so-called 'deferral jurisdiction' ... so exhaustion depends on the filing of a charge with the [EEOC] within 300 days of the purported discriminatory act."). The cause of action accrues on the date of the "alleged unlawful employment practice." 42 U.S.C. § 12117(a).

Defendants argue that Wilson's cause of action accrued, at the latest, on January 16, 1996, the date Prudential sent a letter to Wilson notifying him that his disability was classified as mental and that his benefits would terminate after twenty-four months. Because Wilson did not complain to the EEOC until March 13, 1998, 727 days after receiving the letter, they argue his claim is time-barred.

Wilson counters first that Prudential's letter was not referenced in his complaint and is, therefore, outside the scope of Defendants' motions to dismiss. Regardless, Wilson argues that his cause of action accrued on August 8, 1997, the date his disability benefits ceased, thus rendering his claim timely.

■ Wilson's letter from Prudential was not referenced in his complaint. It is, therefore, outside the scope of these motions, unless its authenticity is undisputed by the parties or it is central to Wilson's claim. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). Because the letter may establish the date Wilson's cause of action accrued, it is central to his claim and may be considered.

The question then is whether Wilson's cause of action accrued on the date he received notice that his disability was classified as mental and that his benefits were limited, or on the date his disability benefits actually terminated. The Supreme Court in *Delaware State College v. Ricks* addressed the appropriate accrual date. *See* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). In *Ricks*, the plaintiff, a college professor, was denied tenure and later terminated. The plaintiff argued that he was discriminated against both by his tenure denial and by his termination. The Court held that the discrimination occurred when the professor was denied tenure, and that his termination was merely a subsequent effect of the discriminatory act. *See id.* at 257–58, 101 S.Ct. 498; *Morris v. Government Dev. Bank of Puerto Rico*, 27 F.3d 746, 749 (1st Cir.1994) (relying on *Ricks* to hold that a cause of action accrues when the plaintiff first learns of the discriminatory action).

Wilson counters that rather than follow *Ricks* and *Morris*, this court should adopt the reasoning in *Johnson v. General Electric*, 840 F.2d 132, 136–37 (1st Cir.1988). In *Johnson*, the plaintiff employee sued his employer for racial discrimination based on an alleged discriminatory review pro-

cess. The employer required the plaintiff to undergo the discriminatory process to be considered for a promotion, a promotion that he was later denied. The First Circuit held that the plaintiff's cause of action accrued when he was denied the promotion, and not when he was required to undergo the discriminatory process. By more narrowly construing *Ricks,* the court noted that the promotion's denial was the first point that the tangible effects of the discrimination became apparent. *See id.* Accordingly, Wilson contends that, because the discrimination first became apparent when his benefits ceased, his cause of action accrued on August 8, 1997.

The First Circuit recently revisited the issue in *Thomas v. Eastman Kodak Co.,* 183 F.3d 38 (1st Cir.1999). In *Thomas,* the plaintiff employee sued her employer for racial discrimination, alleging that her layoff resulted from racially-based, negative performance appraisals. The court considered whether her cause of action accrued when the plaintiff received the performance appraisals or when she was notified of her layoff. Citing both *Johnson* and *Ricks,* the First Circuit held that the plaintiffs cause of action accrued when she received notice of the layoff, because the appraisals did not indicate that the plaintiff would suffer an immediate consequence from her alleged bad performance. Rather, the actual layoff notice she received was the first point that the consequences of the appraisals' discrimination became apparent. *Id.* at 55. The actual layoff was the subsequent, inevitable consequence of the discrimination, i.e. of the layoff notice.

The alleged discriminatory Plan here is analogous to the discriminatory appraisals in *Thomas.* The Plan's potential for discrimination had no tangible effect on Wilson until he was notified on January 16, 1996 that his disability was classified as mental and that his benefits would terminate in twenty-four months. The notification letter then is analogous to the layoff notice in *Thomas* in that it was

the first point Wilson knew that the Plan's alleged discriminatory provisions were being applied to him. The actual termination of benefits, like the actual layoff in *Thomas,* was merely the delayed, but inevitable, consequence of the alleged discrimination. Accordingly, Wilson's cause of action accrued on January 16, 1996, 724 days before he filed his EEOC complaint, and Count I is dismissed as time-barred.

## B. Title III of the ADA Claims

Defendants move to dismiss Counts II and III, both of which allege ADA Title III violations. Count II alleges that Prudential discriminated against Wilson based on his mental disability by maintaining a long-term disability policy that treats mental and physical disabilities differently. Count III states that Prudential violated Title III by refusing to pay Wilson's rehabilitation expenses based on the Plan's mental-disability limit.

Defendants' motions to dismiss both counts turn on an issue not yet decided by the First Circuit: whether the ADA requires a private employer-sponsored disability plan to provide equal benefits for mental and physical disabilities. Title III of the ADA provides:

> It shall be discriminatory to afford an individual or a class of individuals, on the basis of such disability ... with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

42 U.S.C. § 12182(b)(1)(A)(ii).

By not condoning or condemning different benefits for different disabilities, the statute sheds little light on the issue and, without First Circuit precedent, the court must look to other circuit law for guidance. A plethora of rulings on the subject all reach the same conclusion—the ADA does not require equal benefits for different disabilities. *See Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1116–

18 (9th Cir.2000) (holding plan administrator's decision to classify mental-illness risks differently than physical disabilities is permissible); *EEOC v. Staten Island Savings Bank,* 207 F.3d 144, 148–53 (2d Cir.2000) (holding ADA does not require parity between mental and physical disabilities); *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1101–02 (10th Cir.1999) ("ADA does not prohibit an employer from operating a long-term disability benefits plan which distinguishes between … disabilities."); *Lewis v. Kmart Corp.,* 180 F.3d 166, 170 (4th Cir.1999) (noting that disability plan need not provide same benefits for all disabilities); *Ford,* 145 F.3d at 608 ("The ADA does not require coverage for every type of disability."); *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1015–19 (6th Cir.1997) (en banc) ("The disparity in benefits [is permitted] by the ADA because the ADA does not mandate equality …"); *EEOC v. CNA Ins. Co.,* 96 F.3d 1039, 1044–45 (7th Cir.1996) (upholding plan that promised physical-disability benefits until age 65, but mental-disability benefits only for two years); *Krauel v. Iowa Methodist Med. Ctr.,* 95 F.3d 674, 678 (8th Cir.1996) (ruling that excluding one disability from coverage does not violate ADA if exclusion applies to all individuals); *see also Modderno v. King,* 82 F.3d 1059, 1061 (D.C.Cir.1996) (holding § 504 of the Rehabilitation Act does not require equivalent benefits for different disabilities).

■ Today, this court joins the numerous courts which hold that the ADA does not require equal benefits for different disabilities. There are four reasons it does so. First, as set forth above, the circuit law on the subject overwhelmingly supports this conclusion.

Second, support also is found in the ADA's legislative history. The House Judiciary Committee Report and the Senate Committee on Labor and Human Resources Report both acknowledge that "it is permissible for an employer to offer insurance policies that limit coverage for certain procedures or treatments," if disabled individuals "have equal access to the … insurance coverage … provided by the employer to all employees." H.R.Rep. No. 101–485(III), at 38 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 445, 460–61; S.Rep. No. 101–116, at 29 (1989). Moreover, the Senate Report notes that insurance plans may offer "only a specified amount per year for mental health coverage." S.Rep. No. 101–116, at 29. The legislative history, therefore, favors ruling that the ADA permits different benefits for mental and physical disabilities, so long as all individuals have equal access to the insurance plan.

Third, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, also supports this conclusion. The ADA's language mirrors that in § 504 of the Rehabilitation Act. Because of this, courts construing the ADA may look for guidance to similar cases construing the Rehabilitation Act. *See EEOC v. Amego,* 110 F.3d 135, 143 (1st Cir.1997) ("Courts … use caselaw under § 504 of the Rehabilitation Act for guidance in interpreting the ADA."). The Supreme Court in *Traynor v. Turnage* upheld a federal statute that precluded the Veterans Administration from granting extensions to a ten-year delimiting period based on the veteran's disability classification. *See* 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). The Court stated "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." *Id.* at 549, 108 S.Ct. 1372; *see also Modderno,* 82 F.3d at 1061. The Supreme Court's ruling on language identical to that in the ADA favors the conclusion that parity in disability benefits is not mandated.

Lastly, legislative action since the ADA's passage lends credence to this holding. In 1996, Congress passed the Mental Health Parity Act (MHPA) as an amendment to the Health Insurance Portability and Accountability Act. *See* 42 U.S.C. § 300gg–

5(1)–(2). The MHPA prohibits employers from placing annual or lifetime limits on mental-health benefits where no similar limit is placed on physical-disability benefits, unless the employer's costs would increase by more than one percent because of the new coverage requirement. *See id.* Discussing the MHPA, its co-sponsor noted that the legislation was "a compromise to begin down the path of parity and non-discrimination for mentally ill people in this country who have health insurance." 142 Cong.Rec. S9917 (daily ed. Sept. 5, 1996) (statement of Rep. Domenici). The MHPA's passage evidences that existing laws at the time, including the ADA, did not require equal benefits.

Wilson attempts to distinguish this reasoning and overwhelming circuit law by arguing that the Supreme Court's decision in *Olmstead v. Zimring* altered the legal landscape. *See* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999). Relying on a footnoted rebuttal to the dissent, Wilson asserts that *Olmstead* stands for the proposition that Wilson can prove discrimination by showing different treatment of two members of the same class. *See id.* at 590, 119 S.Ct. 2176, n. 10. Wilson's argument is not compelling. *Olmstead* involved Title II of the ADA, the provision governing reasonable accommodation by public entities, and one not at issue in this case. More compelling, however, *Olmstead* bears little factual resemblance to the case at hand. In *Olmstead,* the court required the State of Georgia, under the ADA's insistence upon reasonable accommodation, to place two qualified, mentally-disabled women in less restrictive, community-based treatment centers instead of continuing their institutionalization. Disparate treatment of different disabilities was not at issue.

Eight circuit decisions, ADA legislative history, case law interpreting the Rehabilitation Act, and post-ADA legislative action all favor holding that the ADA does not require equal benefits for different disabilities. "So long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities." *Ford v. Schering–Plough Corp.,* 145 F.3d 601, 608 (3d Cir.1998). Because Wilson does not allege that he was denied access to the disability plan, he fails to state a claim, and Counts II and III are dismissed.

## C. ERISA Claims

Finally, Defendants move to dismiss Wilson's remaining claims brought under ERISA. Wilson alleges that Defendants violated ERISA by refusing to pay his rehabilitation expenses based on the mental-disability benefit limit (Count IV), refusing to pay the rehabilitation expenses in breach of its fiduciary duty (Count V), and failing to promptly notify Wilson that his payment request for the rehabilitation expenses was denied (Count VI).

### 1. Count IV: Refusal to Pay Rehabilitation Expenses Based on Plan

Prudential moves to dismiss Count IV for failure to state a claim, arguing that ERISA imposes no independent obligation of parity between mental and physical-disability benefits and thus, that denying payment cannot constitute a violation.

■ ERISA does not require that employment plans to provide equal benefits for different disabilities. In fact, it gives plan sponsors significant discretion to define the terms of their plans. *See Gallagher v. Park West Bank & Trust Co.,* 11 F.Supp.2d 136, 140 (D.Mass.1998) ("[P]lan sponsors retain the discretion to create, within broad limitations, whatever pension benefit plan they prefer, and to modify or terminate a pension plan completely. ERISA liability attaches only to the management or administration of a plan.").

Because ERISA does not require parity, Wilson's Count IV claim rests upon a finding that the ADA prohibits the Plan's disparate treatment of mental and physical

disabilities. If such a prohibition existed, Wilson would have an ERISA claim for benefits due him under the Plan, i.e. benefits for his mental disability equal to those he could receive for a physical disability. *See* 29 U.S.C. § 1132(a)(1)(B). However, because the Plan does not violate the ADA, as stated above, Count IV fails to state an ERISA claim, and is dismissed.

### 2. Count V: Refusal to Pay Rehabilitation Expenses in Breach of its Fiduciary Duty

Count V states that by refusing to pay Wilson's rehabilitation expenses, Defendants breached the fiduciary duty in violation of 29 U.S.C. § 1132(a)(2). Section 1132(a)(2) provides that "[a] civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109 renders a fiduciary liable for any losses incurred by the plan as a result of a breach of the fiduciary duty. *See* 29 U.S.C. § 1109.

Defendants argues that Count V must be dismissed because Wilson does not contend that the plan itself incurred losses. Wilson concedes this point in his reply brief. He nevertheless argues that to perfect his claim he need only file an amended complaint, replacing his § 1132(a)(2) claim with § 1132(a)(3) claim.

Assuming for the sake of argument that this court permitted Wilson to file an amended complaint, any claim under § 1132(a)(3) also would fail to state a claim. Section 1132(a)(3) permits a plan participant to file a civil action to enjoin acts that violate ERISA or to obtain other equitable relief to redress ERISA violations and enforce ERISA provisions. Wilson cites *Varity Corp. v. Howe* for the proposition that he may bring an individual action under § 1132(a)(3). *See* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Although *Varity* interpreted § 1132(a)(3) to authorize individual suits, its holding is not as broad as Wilson contends. The Supreme Court ruled that an

individual can sue under § 1132(a)(3), but he or she must: (1) only seek equitable relief, and (2) have no more specific means of relief available. *See Varity*, 516 U.S. at 508–15, 116 S.Ct. 1065; *Turner v. Fallon Community Health Plan*, 127 F.3d 196, 200 (1st Cir.1997).

█ Wilson's claim seeks damages in the amount of the rehabilitation expenses, not injunctive relief. Furthermore, the remedy for a claim that a plan participant's benefits were improperly denied is specifically provided for in § 1132(a)(1)(B). *See Turner*, 127 F.3d at 200 (holding plaintiff had no claim under § 1132(a)(3) because his grievance that benefits were denied is specifically addressed in § 1132(a)(1)(B)). Thus, even if Wilson amended Count V, he would fail to state a claim upon which relief can be granted. Count V is dismissed.

### 3. Count VI: Failing to Notify that Payment Request was Denied

Wilson finally claims that Prudential violated ERISA by failing to notify him that his request for payment of rehabilitation expenses was denied. Prudential moves for dismissal for failure to exhaust administrative remedies. Wilson does not dispute that he failed to exhaust his administrative remedies, but counters that exhaustion was not required because it would have been futile and because he never was provided meaningful access to administrative remedies.

█ ERISA requires that every employee-benefit plan provide adequate written notice to any participant or beneficiary whose benefits claim has been denied and provide a reasonable opportunity for a "full and fair review" of the decision by the appropriate named fiduciary. *See* 29 U.S.C. § 1133. Where the plaintiff makes an ERISA claim for benefits under a specific health insurance plan, the plaintiff must exhaust all administrative remedies before filing a federal lawsuit. *See McLean Hospital Corp. v. Lasher*, 819

F.Supp. 110, 123 (D.Mass.1993). Plaintiff is excused from this requirement only if: (1) resorting to administrative procedures would be futile, (2) the claimant would suffer irreparable harm, or (3) the claimant is wrongfully denied meaningful access to procedures. *See id.*

Wilson argues that his failure is excused on grounds of futility and lack of meaningful access to administrative procedures. By its litigation position and by its informing Wilson's MRC counselor that it would not reimburse any rehabilitation expenses, Prudential arguably has evidenced an intent to refuse Wilson's claim. But, this court will not predict how Prudential would have decided Wilson's claim on review. As for meaningful access to administrative procedures, neither party disputes that Prudential has an administrative review process in place under which the denial of Wilson's claim can be challenged. Accordingly, Wilson must utilize this process before the court will entertain his claim. Thus, Count VI is dismissed without prejudice and may be refiled following administrative review.

### CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss Counts I through VI are ALLOWED.

IT IS SO ORDERED.