Ellen EL–HAJJ, Plaintiff

v.

FORTIS BENEFITS INS. CO., Defendant

No. 01–CV–56–B–S.

United States District Court, D. Maine.

Aug. 8, 2001.

Arthur J. Greif, Gilbert & Greif, P.A., Bangor, ME, for Ellen El–Hajj, plaintiff.

Nancy R. Kuhn, Anne M. Brafford, Morgan, Lewis & Bockius, Washington, DC, Jon Haddow, Farrell, Rosenblatt & Russell, Bangor, ME, for Fortis Benefits Insurance Company, defendant.

**ORDER GRANTING MOTION FOR PARTIAL DISMISSAL**

SINGAL, District Judge.

Presently before the Court are two motions: Defendant's Motion for Partial Dismissal pursuant to Rule 12(b)(6) (Docket # 3) and Defendant's Motion for Leave to File an Amended Answer (Docket # 13). For the reasons discussed below, the Court GRANTS both Defendant's Motion for Partial Dismissal and Defendant's Motion for Leave to File an Amended Answer.

## I. MOTION FOR PARTIAL DISMISSAL

### A. Motion to Dismiss Standard

■ The Court will dismiss a claim under Rule 12(b)(6) only if it clearly appears that, on the facts alleged in the complaint, the plaintiff cannot recover on any viable theory. *See Gonzalez–Morales v. Hernandez–Arencibia,* 221 F.3d 45, 48 (1st Cir.2000). When considering a motion to dismiss, a court must accept as true all of a plaintiff's well-pleaded factual averments and indulge every reasonable inference in the plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990). Applying this standard, the Court lays out below the facts of the case as set forth in the Complaint.

### B. Background

From May 15, 1995 to June 1, 1999, Plaintiff Ellen El–Hajj worked as an employee of MBNA America Bank ("MBNA") at the company's office in Belfast, Maine. Part of her employment compensation included coverage under a group long-term disability plan issued by Defendant Fortis Benefits Insurance Company ("Fortis"). On September 6, 1996, El–Hajj allegedly became disabled. From September 10, 1996 to September 1, 2000, she was unable to work.[1]

---

**1.** El–Hajj returned to work for a few weeks in 1997, but was unable to remain at work.

On October 14, 1997, El–Hajj submitted to Fortis an application for long-term disability benefits. Fortis denied her application for benefits. After El–Hajj appealed to Fortis, the company changed its determination. On March 24, 1999, Fortis notified El–Hajj that it would pay her disability benefits. Fortis stated that it considered El–Hajj to be psychologically disabled and that it would treat her as if she became disabled on May 6, 1997 Denying a psychological disability, El–Hajj maintains that she was disabled due to a physical condition, postural orthostatic tachycardia syndrome ("POTS").

Prior to January 1, 1997, Fortis's long-term disability policy stated that it would pay long-term disability benefits for twenty-four months to those participants rendered disabled by a psychological condition. As of January 1, 1997, the policy changed to provide benefits to those psychologically disabled for a period of only twelve months. Both before and after January 1, 1997, the Fortis policy stated that it pays disability benefits to physically disabled participants until they reach retirement age.[2]

Viewing El–Hajj as psychologically disabled since a date subsequent to January 1, 1997, Fortis paid her disability benefits for a period of twelve months. Unhappy with this coverage, El–Hajj filed suit with the Court on March 23, 2001.

### C. Discussion

Plaintiff brings four claims against Defendant: violating Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, (Count I); violating Title III of the ADA (Count II); violating the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, (Count III); and violating a provision of the Maine Insurance Code, 24–A M.R.S.A. § 2159–A (Count IV). In the Motion for Partial Dismissal, Defendant argues that Counts I, II and IV should be dismissed for failing to state a claim.

#### 1. Counts I & II—Plaintiff's ADA Claims

Key to her claims, Plaintiff alleges that she is physically disabled. In the eyes of Defendant, however, Plaintiff argues that she is "regarded as having" a psychological disability. *See* 42 U.S.C. § 12102(2)(C). Plaintiff asserts that because Defendant's policy provides superior benefits to those physically disabled as compared to those psychologically disabled, it necessarily must follow that Defendant's policy violates the ADA. This argument, however, has been made many times before, almost always without success. *See, e.g., Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir.2000); *Kimber v. Thiokol Corp.*,

---

**2.** Defendant argues that the long-term disability benefits policy is not as black-and-white as Plaintiff contends because it provides twelve months of benefits for some types of physical disabilities, such as arthritis and scoliosis, and it provides coverage until retirement age for some types of mental disabilities, such as schizophrenia and amnesia. Plaintiff insists that these exceptions do not cure the policy of its discriminatory bias because to receive benefits until retirement age, "all mental illnesses are excluded, other than a handful which the evidence will show are organically based, and all physical illnesses are excluded except a handful which the evidence will show are perceived to be entirely subjective in their diagnosis." (Pl. Mem. in Opp'n to Def. Mot. for Partial Dismissal of Compl. at 3 (Docket # 5).) Looking to the Complaint rather than potential evidence when deciding the Motion to Dismiss, the Court indulges every reasonable inference in Plaintiff's favor to determine whether she can recover on any viable theory. For the purposes of the instant Motion, the Court analyzes the policy as if it clearly differentiates between the mentally disabled and the physically disabled.

196 F.3d 1092, 1102 (10th Cir.1999); *Rogers v. Dep't of Health & Envtl. Control,* 174 F.3d 431, 436 (4th Cir.1999); *Ford v. Schering–Plough Corp.,* 145 F.3d 601, 608 (3rd Cir.1998); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1019 (6th Cir.1997); *cf. Modderno v. King,* 82 F.3d 1059, 1061 (D.C.Cir.1996) (rejecting same argument made with a claim under the Rehabilitation Act, which is interpreted in the same manner as the ADA). *But see Boots v. Northwestern Mut. Life Ins. Co.,* 77 F.Supp.2d 211, 219 (D.N.H.1999) (holding that plaintiff may state ADA claim because insurer provided lesser benefits to the psychologically disabled versus the physically disabled).

The majority of courts based their holdings on numerous sound principles, such as (1) the plain language of the ADA does not suggest that it requires equal treatment of the mentally and the physically disabled, *see, e.g., EEOC v. Staten Island Sav. Bank,* 207 F.3d 144, 149 (2nd Cir.2000); (2) the ADA's legislative history suggests that Congress did not intend for the Act to establish parity between the treatment of mental and physical disabilities, *see, e.g., Wilson v. Globe Specialty Prods., Inc.,* 117 F.Supp.2d 92, 96–97 (D.Mass.2000); (3) congressional action subsequent to the passage of the ADA implies that Congress believes that the ADA does not require equal treatment of mental and physical disabilities, *see, e.g., Parker,* 121 F.3d at 1018 (citing the Mental Health Parity Act, 42 U.S.C. § 300gg–5); (4) EEOC guidance documents recognize that most insurance plans provide lesser coverage for psychological disabilities, *see, e.g., Weyer,* 198 F.3d at 1116–17; and (5) requiring insurers to provide equal coverage for different types of disabilities "would destabilize the insurance industry in a manner definitely not intended by Congress when passing the ADA," *e.g., Ford,* 145 F.3d at 608. In addition, the Supreme Court has held that

the Rehabilitation Act, 29 U.S.C. § 794 *et seq.,* which is the precursor to the ADA, does not require equal treatment of those with psychological disabilities versus those with physical disabilities. *See Traynor v. Turnage,* 485 U.S. 535, 549, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); *Alexander v. Choate,* 469 U.S. 287, 302, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Courts often rely on case law interpreting the Rehabilitation Act when analyzing the ADA, and therefore several courts have relied on the *Traynor* and *Alexander* rulings to foreclose arguments similar to Plaintiff's. *See, e.g., Rogers,* 174 F.3d at 433–34.

Plaintiff argues that the relatively recent Supreme Court decision of *Olmstead v. L.C. by Zimring,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), has altered the legal landscape in her favor, rendering inapplicable all of the above-cited holdings. In *Olmstead,* the Court held that the State of Georgia violated the ADA by keeping two mentally retarded women institutionalized instead of placing them in community-based homes as recommended by their doctors. *See id.* at 602–03, 119 S.Ct. 2176. Based on a footnote in *Olmstead,* Plaintiff argues that disparate treatment between different categories of people within a protected class can amount to discrimination. *See id.* at 598 n. 10, 119 S.Ct. 2176. Specifically, Plaintiff contends that the ADA prohibits an insurer from treating the physically disabled more favorably than the mentally disabled. *See id.* (citing *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (fifty-six-year-old worker may state claim for age discrimination even though he was replaced by someone who was forty years old, whose age also placed him within the class of persons protected by the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*)). Plaintiff implies that disabled people historically

have suffered discrimination, but that the mentally disabled suffer from a stigmatization that exceeds what the physically disabled must endure, as evidenced by the differential treatment embodied in Defendant's long-term disability plan.

While this argument makes some sense from a public policy standpoint, it has not received explicit legislative approval. *See EEOC v. CNA Ins. Cos.*, 96 F.3d 1039, 1044 (7th Cir.1996) ("the issue of parity among physical and mental health benefits is one that is still in the legislative arena."). Absent such approval from Congress, this Court has neither the duty nor the authority to require mental health parity. Rather, the Court must interpret the laws as written by Congress. As both parties point out, the First Circuit has not addressed whether an insurer violates the ADA by providing lesser benefits to the mentally disabled as opposed to the physically disabled. Courts in this district, however, have considered the argument put forth by Plaintiff and have found that it fails. *See, e.g., Conners v. Me. Med. Ctr.*, 42 F.Supp.2d 34, 55 (D.Me.1999); *Trask v. Gen. Signal Corp.*, No. Civ. 98–0220–B, 1999 WL 1995204, at *1 (D.Me. Aug.13, 1999) (recommended decision adopted by the district court on Sept. 15, 1999 in an unpublished order); *EEOC v. Bath Iron Works*, Civil No. 97–355–P–H, 1999 U.S. Dist. LEXIS 10600, at *21–22 (D.Me. Feb.8, 1999) (recommended decision adopted by the district court, 1999 U.S. Dist. LEXIS 10596, at *1–2 (D.Me. Mar. 19, 1999)).

Moreover, several courts specifically have found that *Olmstead* does not alter the validity of the line of cases holding that an insurer does not transgress the ADA by treating mental and physical disabilities differently. *See Weyer*, 198 F.3d at 1117–18; *Wilson*, 117 F.Supp.2d at 97; *Witham v. Brigham & Women's Hosp., Inc.*, Civil No. 00–268–M, 2001 U.S. Dist. LEXIS 7027, at *12 (D.N.H. May 31, 2001); *Pelletier v. Fleet Fin. Group, Inc.*, No. CIV. 99–245–B, CIV. 99–CV–146–PH, 2000 WL 1513711, at *3 (D.N.H. Sept.19, 2000) (unpublished opinion); *see also Staten Island*, 207 F.3d at 151 (mentioning *Olmstead* while holding that disparate insurance coverage between mentally and physically disabled is permissible under the ADA). *But see Boots*, 77 F.Supp.2d at 218–19 (relying in part on the *Olmstead* footnote to hold that the ADA prohibits insurers from providing lesser benefits to the mentally disabled as opposed to the physically disabled).

The footnote relied upon by Plaintiff constitutes dicta. *See Olmstead*, 527 U.S. at 598 n. 10, 119 S.Ct. 2176. It is not a component of the Supreme Court's holding, and it neither suggests nor implies that insurance policies cannot differentiate between different types of disabilities. *See id.* Moreover, despite Plaintiff's protests to the contrary, the Court agrees with Magistrate Judge Cohen's reading that the *Olmstead* footnote "merely reiterates the holding of *O'Connor*," and that it does not create new law to aid ADA claimants. *See Hess v. Allstate Ins. Co.*, No. 99–384–P–C, 2000 WL 1186262, at *9 (D.Me. Aug.2, 2000) (recommended decision).[3] In addition, the holding in *Olmstead* relied in large part on regulations promulgated by the Attorney General that compelled public entities to integrate disabled persons rather than institutionalize them. *See id.* at 592, 119 S.Ct. 2176 (citing 28 C.F.R. § 35.130). Thus, *Olmstead* is

---

3. Before the district judge had an opportunity to affirm or modify the Magistrate Judge's recommended decision, the parties filed notice of settlement and a stipulation of dismissal.

easily distinguishable from the present case.

Based on the foregoing, the Court finds that the ADA does not create a cause of action against insurers who provide different levels of coverage for those who are mentally disabled versus those who are physically disabled. The Court concludes that Plaintiff cannot state a claim on Counts I or II.

### 2. Count IV—Maine Insurance Statute

■ Next, Plaintiff argues that the disparate treatment between the mentally and the physically disabled violates a provision of the Maine Insurance Code, which states in part:

> No insurer authorized to transact business in this State may refuse to insure or continue to insure, limit the amount, extent or kind of coverage available to an individual or charge an individual a rate different from that normally charged for the same coverage solely because the insured or the applicant for insurance has a physical or mental handicap ... unless the basis for that action is clearly demonstrated through sound actuarial evidence.

24–A M.R.S.A. § 2159–A. Defendants argue that (1) the Maine statute does not provide for a private cause of action based on an alleged violation of this statute, (2) the plain language of the statute does not prohibit insurers from providing different levels of coverage for physical versus mental disabilities, and (3) ERISA preempts any claim based on this state insurance statute. The Maine Supreme Judicial Court has not had occasion to address this provision of the Maine Insurance Code.

The Court agrees with Defendants' first and second arguments. First, the statutory provision relied upon by Plaintiff does not establish a private cause of action. *See Hess*, 2000 WL 1186262, at *12 (plaintiff conceded that section 2159–A did not create a right of action). Section 2159–A is included in Title 24–A, Chapter 23 of the Maine Revised Statutes, entitled "Trade Practices and Fraud."

> Only one section of the chapter, § 2168, "Coercion in requiring insurance," provides for a private action in the form of the entry of an injunction "on complaint of any person that *this section* is being violated." *Id.* § 2168(3) (Emphasis added). Section 2165–A of Title 24–A spells out the statutory scheme for the enforcement of the remainder of Chapter 23 of the Title, and all of the enforcement mechanisms relate back to Section 12–A, the general civil penalty and enforcement provisions. All of those provisions contemplate the Superintendent of Insurance as the individual who will seek enforcement of the chapter. There is no additional private right created pursuant to Chapter 23 ....

*Witt v. Aetna United States Healthcare, Inc.*, Civil No. 00–31–B–C, 2000 WL 1336491, *3, 2000 U.S. Dist. LEXIS 13264, at *10 (D.Me. Sep.14, 2000) (recommended decision) (relying on *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 101 (Me. 1984), to find that neither section 2152 nor 2154 creates a private cause of action).[4]

Alternately, Plaintiff argues that the Court could treat her section 2159–A claim as a breach of contract claim, and that Defendant has breached the insurance contract between them by violating section 2159–A because, according to Plaintiff, every Maine insurance contract necessarily

---

**4.** Before the district judge had an opportunity to affirm or modify the Magistrate Judge's recommended decision, the parties filed notice of settlement and a stipulation of dismissal.

includes all the terms of the Maine Insurance Code. *See Wescott v. Allstate Ins.,* 397 A.2d 156 (Me.1979) (an automobile liability insurance policy is presumed to incorporate statutes requiring uninsured motorist coverage). Plaintiff, however, has not brought a breach of contract claim in the Complaint.

■ Second, even if Plaintiff did have a private right of action pursuant to section 2159–A, the plain language of the statute does not apply under the present set of circumstances. The plain language of the section requires insurers to offer coverage on the same terms and conditions to both disabled and non-disabled persons unless sound actuarial evidence justifies differential treatment. *See* 24–A M.R.S.A. § 2159–A. The language neither implies nor suggests that insurers must treat the mentally disabled in the same way that it treats the physically disabled. *See Pelletier,* 2000 WL 1513711, at *4 (unpublished opinion). Thus, Count IV of the Complaint fails to state a claim.[5]

## II. MOTION FOR LEAVE TO AMEND ANSWER

■ Plaintiff filed the Complaint with the Court on March 23, 2001. The Complaint alleges in part that:

> Defendant has denied Plaintiff benefits under the [long-term disability] policy for any period of disability in excess of twelve (12) months. Plaintiff has exhausted her appeal rights with Defendant and has complied with all administrative prerequisites to the filing of this suit.

(Compl. ¶ 8 (Docket # 1).) In response to the Complaint, Defendant filed an Answer on April 17, 2001, which states in pertinent part:

> Fortis denies that Plaintiff was "denied" any benefits due to her under the [long-term disability] policy but admits that Plaintiff was granted benefits under the [long-term disability] policy for a period of twelve (12) months only. Fortis admits that Plaintiff has exhausted her appeal rights with Fortis. Fortis states that it need not admit or deny whether Plaintiff has complied with all administrative prerequisites to the filing of this suit, as this allegation asserts a conclusion of law as to which no response is required. To the extent a response is required, Fortis denies this allegation.

(Answer ¶ 8 (Docket # 2).) Elsewhere in the Complaint, Plaintiff accuses Defendant of misclassifying the start date of her disability as May 6, 1997 because she allegedly became disabled on September 9, 1996. (Compl.¶ 17(a) (Docket # 1).) In the original Answer, Defendant "denies the allegations contained in paragraph 17a." (Answer ¶ 17(a) (Docket # 2).) The Scheduling Order established a deadline of June 11, 2001 for the parties to amend the pleadings. (*See* Scheduling Order (Docket # 4).)

On July 5, 2001, Defendant moved for leave to file an amended answer to clarify that although Defendant admits that Plaintiff exhausted her internal appeals challenging the termination of benefits after twelve months, Defendant overlooked that Plaintiff never appealed the designation of her start date as May 6, 1997.

> Although Fortis intended paragraph 8 to admit only that Ms. El–Hajj had exhausted her appeals right with respect to the application of the 12–month limitation in the [long-term disability] policy,

---

**5.** Regarding Defendant's third argument, the Court declines to consider the applicability of ERISA preemption because the factual record has not yet made clear whether the long-term disabilities benefits plan should be treated as an employee benefits plan, regulated by ERISA, or as an insurance policy, regulated by state statute.

it can be read to admit that El–Hajj exhausted all issues during the appeals process with Fortis. Consequently, Fortis requests leave to amend paragraph 8 of its Answer to clearly deny that Ms. El–Hajj exhausted her appeals rights with respect to the onset date of her disability under the [long-term disability] policy. (Def. Mot. for Leave to File Am. Answer at 2 (Docket #13).) Defense counsel maintains that before filing the Answer, he made a good faith investigation into whether Plaintiff internally had appealed her claims to Defendant, but that he did not realize until discovery that she never had appealed the designation of her disability's commencement date. In the proposed Amended Answer, Plaintiff makes two changes: (1) amending paragraph 8 of the Answer to specifically deny that Plaintiff appealed the onset date for her benefit payments, and (2) adding one new defense, that "Count III fails to state a claim against Fortis for incorrectly determining the onset date of her disability because Plaintiff failed to exhaust this issue in the appeals process with Fortis." (Def. Am. Answer at 7 (Def. Mot. for Leave to File an Am. Answer (Docket #13, Attach.)).)[6]

■ When a party moves for leave to amend a pleading, "leave shall be freely given when justice so requires." Rule 15(a). This is a relatively low standard, but it becomes compounded with a higher standard once the deadline to amend passes because a scheduling order "shall not be modified except upon a showing of good cause." Rule 16(b); *see Abbott v. Bragdon*, 893 F.Supp. 99, 100–01 (D.Me. 1995). Opposing Defendant's request to amend the Answer, Plaintiff argues that Defendant has not shown good cause and that amending the Answer would be futile

because she did not need to make a distinct appeal over the matter of the start date, rather her single internal appeal completely exhausted all of her claims.

First, Defendant argues that good cause exists to grant leave to amend the Answer because Defense counsel made a good faith investigation into the facts but overlooked a detail of the case that apparently demanded more scrutiny during discovery. *See, e.g., Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D.Me.1985) (suggesting that "excusable neglect" can support a showing of good cause). The Court notes that thus far in the motions and briefs, this factual component—the date upon which Defendant commenced making disability payments—has not been a matter of any discussion. Plaintiff does not argue that amending the Answer would cause her any prejudice. This is not a situation reminiscent of *Abbott*, in which the plaintiff sought leave to amend her complaint in an effort to have a bench trial in lieu of a jury trial. *See Abbott*, 893 F.Supp. at 101. In *Abbott*, the court denied the motion on the ground that the plaintiff improperly was trying to alter the suit's structure so as to gain a strategic advantage. *See id.* In the present case, Defendant is attempting to clarify a factual detail of the case while at the same time adding a new defense based on that detail. Defendant's proposed amendments do not introduce new matters into this case, especially in light of the fact that in the initial Answer Defendant denied that it erred in setting the start date at May 6, 1997.

■ Second, the Court denies a motion to amend a pleading if the proposed amendments would be futile. *See, e.g., Simon v. Navon*, 951 F.Supp. 279, 280–81 (D.Me.1997). A proposed amendment is futile if it lacks legal merit to such a

---

6. The Court notes that although Defendant discusses the proposed alterations to paragraph 8 in its Motion for Leave to Amend the Answer, it neglects to mention the new defense.

degree that it would not stand up to a 12(b)(6) motion to dismiss. *See, e.g., id.* At this stage in the proceedings, the legal ramifications of Plaintiff's alleged failure to appeal the commencement date issue are unclear. Plaintiff makes no argument regarding the doctrine of exhaustion that sheds any light on what a claimant must state in an internal appeal before filing a lawsuit. Plaintiff fails to persuade the Court that it would be futile to grant Defendant leave to amend the answer. Thus, the Court finds that good cause and the interests of justice support Defendant's Motion for Leave to File an Amended Answer.

## III. CONCLUSION

Based on the foregoing, the Court GRANTS Defendant's Motion for Partial Dismissal of Counts I, II and IV. In addition, the Court GRANTS Defendant's Motion for Leave to File an Amended Answer.

SO ORDERED.