**KARSTEN MANUFACTURING CORPORATION, Plaintiff,**

v.

**OSHMAN'S SPORTING GOODS, INC.— SERVICES and Oshman Sporting Goods Co., Arizona, Defendants.**

**Civ. No. 94–0974 PHX–PGR.**

United States District Court, D. Arizona, First Division.

Dec. 7, 1994.

Thomas G. Watkins III, Phoenix, AZ, for plaintiff.

Joseph W. Mott & Patricia A. Hubbard, Phoenix, AZ, Kent A. Rowald, Houston, TX, for defendants.

## ORDER

ROSENBLATT, District Judge.

Pending before the Court are Defendants' Motion to Dismiss and Plaintiff's Motion for Judgment on the Pleadings.

### BACKGROUND

Plaintiff manufactures PING golf clubs.[1] Plaintiff has a network of authorized dealers to sell their PING golf clubs. These dealers evaluate each individual purchaser of PING golf clubs in order to provide Plaintiff with certain information, which allows Plaintiff to custom fit[2] each set of PING golf clubs to the purchaser.[3] Once this information is received by Plaintiff, it is entered into a computer and assigned a serial number, which is etched into the PING golf clubs[4]. Thereafter, if the purchaser needs assistance with the PING golf clubs, the purchaser need only call a support number, maintained by Plaintiff and staffed by golf professionals paid by Plaintiff, and give the serial number from the clubs to the support staff. The staff can then look up the information related to that specific set of clubs in their computer, and assist the customer with repair, replacement or adjustment. As a matter of policy, if the customer cannot provide the serial number from his or her clubs, Plaintiff's support staff will not provide consultation or assistance to that customer.

Defendants sell sporting goods. Defendants are not an authorized dealer of PING golf clubs. Defendants allegedly obtain their supply of PING golf clubs from a group known as "Collectors". These Collectors contact authorized PING golf club dealers and purchase sets of clubs from them. The Collectors then resell the clubs to others such as Defendants. In order to prevent Plaintiff from tracing these sets of clubs back to the authorized dealer selling the sets to the Collectors, the Collectors and/or Defendants allegedly grind or file the serial numbers off the PING golf clubs.

Plaintiff contends these altered PING golf clubs infringe their trademarks and are counterfeit. Plaintiff claims that purchasers of these altered clubs believe they are entitled to the benefits of owning PING golf clubs, i.e. the support service provided by Plaintiff to purchasers of non-altered PING golf clubs. However, because Plaintiff does not provide support service to purchasers who cannot provide a serial number, these customers are not receiving the product they believe they are purchasing when they purchase the altered clubs from Defendants. Plaintiff further claims that the sale of these altered clubs damages their name, reputation and goodwill because the purchasers of the altered PING clubs hold Plaintiff responsible for the deception and misrepresentation.

Plaintiff also claims that Defendants know about the contract between Plaintiff and its authorized dealers not to sell PING golf clubs to dealers wholesaling unfitted, custom made PING irons to third parties. Plaintiff therefore claims that Defendants are interfering with the contractual relations between Plaintiff and its dealers by inducing its dealers to sell the clubs to the Collectors and/or

---

1. Although Plaintiff manufactures woods, irons and putters, Plaintiff's claims against Defendants only relate to the unauthorized sale of irons.

2. A "custom fit" is based upon the golfer's height, hand size, age, strength, posture, ball address position, swing speed, weight, golfing style, the distance from the wrist or finger tips to the ground, the club head to turf angle or club head "lie" and other subjective criteria.

   If two golfers had the same information based upon these criteria, they would both receive a set of clubs with the identical shaft length, grip style and diameter, shaft type and stiffness, club head lie, swing weight and special instructions. Each set, however, would be etched with a different serial number.

3. Plaintiff also provides golf clubs to its dealers which are already etched with a serial number, but have not been called in by the dealer for a specific golfer. However, once the information has been taken from the individual purchaser, if that information would lead the dealer to order a set of clubs which is in stock, the dealer can sell the in-stock set of clubs rather than ordering a set from Plaintiff.

4. The same serial number is etched into each club of a set.

Defendants in violation of the contract between Plaintiff and its dealers.

Plaintiff filed suit against Defendants on May 13, 1994 for alleged trademark infringement, trademark counterfeiting, unfair competition and interference with contractual relations under the United States Trademark Laws and Arizona common law.

## MOTION TO DISMISS

Defendants have filed a motion to dismiss Counts 1 and 3 of the complaint for failure to state a claim upon which relief can be granted. Count 1 relates to trademark infringement/trademark counterfeiting; Count 3 relates to interference with contractual relations.

■ In analyzing a motion to dismiss for failure to state a claim upon which relief may be granted, all allegations of material fact in the plaintiff's complaint are taken as true and construed in the light most favorable to the non-moving party. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir. 1991). Dismissal of an action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "proper only where it 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.*, citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992) (dismissal pursuant to Rule 12(b)(6), Fed. R.Civ.P. appropriate where it appears beyond doubt that plaintiffs can prove no set of facts in support of the claim which would entitle them to relief).

### A. Counterfeiting

Defendants claim that Plaintiff has failed to establish the necessary elements of trademark counterfeiting. Defendants claim that Plaintiff "admits that the PING irons sold by Oshman's [Defendants] are manufactured and branded by Karsten." *See* Defendants' Motion to Dismiss at 5. Defendants therefore claim that based upon this admission, Plaintiff cannot now claim the PING irons are counterfeit because they acknowledge

that these irons are those manufactured and branded by Plaintiff. Further, Defendants claim in their reply that because Plaintiff is seeking prejudgment interest under 15 U.S.C. § 1117, and because this relief is only available for violations of the Trademark Counterfeiting Act of 1984, Plaintiff must be seeking relief under the Trademark Counterfeiting Act of 1984.

Plaintiff claims that it is not invoking the provisions of the Trademark Counterfeiting Act of 1984 (15 U.S.C. § 1116), but is only alleging trademark infringement under 15 U.S.C. § 1114. *See* Plaintiff's Response to Defendants' Motion to Dismiss ("Response") at 3 ("KARSTEN'S COMPLAINT COUNT 1 ASSERTS A CLAIM FOR TRADEMARK INFRINGEMENT, BUT DOES NOT INVOKE THE TRADEMARK COUNTERFEITING ACT OF 1984"). Plaintiff uses the *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614 (9th Cir.1993) case as supporting its contention that Defendants infringed Plaintiff's trademark.

■ Defendants' argument that because Plaintiff is seeking prejudgment interest pursuant to 15 U.S.C. § 1117 it must be invoking the Trademark Counterfeiting Act is also without merit. The relevant portions of § 1117 state:

**(a) Profits; damages and costs; attorney fees**

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under section 1125(a) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

\*    \*    \*    \*    \*    \*

**(b) Treble damages for use of counterfeit mark**

In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits

or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title or section 380 of Title 36 that consist of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621 of Title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.

15 U.S.C. § 1117(a), (b) (as amended).

This section provides for the award of prejudgment interest, in the discretion of the court, upon a finding of *either* a violation of § 1114(1)(a) *or* § 1116(d). Because Plaintiff is alleging a violation of § 1114(1) in their complaint, Plaintiff can certainly request whatever relief is available for a violation of that section in the event it can prove Defendants actually violated section 1114. Therefore, this argument does not support Defendants' contention that Plaintiff is bringing a cause of action under the Trademark Counterfeiting Act.

Because Plaintiff is not expressly invoking the provisions of the Trademark Counterfeiting Act, Defendants' motion to dismiss as to that claim is without merit. Plaintiff does refer to the term "counterfeit" in connection with its claims that Defendants have infringed Plaintiff's trademark. Plaintiff contends that because the serial numbers have been removed from the PING irons sold by Defendants, and because these serial numbers are necessary in order to receive the post-purchase benefits provided to purchasers of PING irons by Plaintiff, Defendants have so altered the PING irons to constitute counterfeiting under the Ninth Circuit case of *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614 (9th Cir.1993).

However, the *Intel* case discusses a violation of 15 U.S.C. § 1114, the trademark *infringement* claim of Plaintiff. Defendants are not challenging Plaintiff's claims regarding infringement in their motion to dismiss. Therefore, this Court need not address Plaintiff's arguments related to the *Intel* case at this point.[5]

### B. Interference with contractual relations

■ Defendants next contend that Plaintiff has failed to establish a necessary element for its claim of interference with contractual relations. Defendants contend their actions were not improper, and therefore they are not liable for the interference with contractual relations between Plaintiff and its authorized dealers. Plaintiff contends that it has sufficiently alleged facts in the complaint which show that Defendants have acted improperly in relation to their claims of interference with contractual relations.

In order to state a prima facie case of intentional interference with contractual relations, Plaintiff must allege:

(1) the existence of a valid contractual relationship;

(2) knowledge of the relationship on the part of the interferer;

5. It should be noted that the text of 15 U.S.C. § 1114 does use the term "counterfeit":
(1) Any person who shall, without the consent of the registrant—
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;
  *    *    *    *    *    *
15 U.S.C. § 1114(1)(a).

However, the definition of "counterfeit" mark relied upon by Defendants is taken from Section 1116(d)(1)(B), which specifically provides that the definition of counterfeit used in that section only applies to that section. *See* 15 U.S.C. § 1116(d)(1)(B) (as amended).

(3) intentional interference inducing or causing a breach;

(4) resultant damage to the party whose relationship has been disrupted; and

(5) that the defendant acted improperly.

*Snow v. Western Savings & Loan Association*, 152 Ariz. 27, 730 P.2d 204, 211 (1986). The only element Defendants contend Plaintiff has failed to show, for purposes of the motion to dismiss, is the fifth element requiring a showing that Defendants acted improperly.

Defendants claim their actions fall within the purview of privilege of competition, and therefore their means was not improper. Further, because Defendants' motive was for the advancement of their own economic interests, Defendants contend that their motive was not improper. In the absence of an improper means or motive, Defendants claim, there can be no showing that their actions were improper, and thus no claim for interference with contractual relations can stand.

In determining whether conduct is "improper" for purposes of intentional interference with contractual relations, the Arizona Supreme Court has adopted seven factors to be considered:

(a) The nature of the actor's conduct,

(b) The actor's motive,

(c) The interests of the other with which the actor's conduct interferes,

(d) The interests sought to be advanced by the actor,

(e) The social interests in protecting the freedom of action of the actor and the contractual interests of the other,

(f) The proximity or remoteness of the actor's conduct to the interference, and

(g) The relations between the parties.

*Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025, 1042 (1985) (quoting Restatement (Second) of Torts § 767).

The Court, in the context of a motion to dismiss for failure to state a claim upon which relief can granted, need only look at the complaint to see if the Plaintiff has alleged sufficient facts which, if proven, could establish a cause of action. All allegations of material fact are to be construed in a light most favorable to the non-moving party, in this case the Plaintiff. Plaintiff alleges in its complaint that Defendants knew of the contract between Plaintiff and its dealers stating that the dealers will not sell wholesale unfitted, custom made PING irons to third parties (Complaint, ¶ 30); that Defendants and/or the Collectors from whom Defendants purchase the PING irons "have adopted a practice of grinding or filing off [Plaintiff's] unique, mechanically stamped serial number from each KMC metal club head" to prevent Plaintiff from discovering the identity of the dealer who has violated the contractual provision not to sell wholesale to third parties (Complaint, ¶ 31); and that Plaintiff was damaged by such actions (Complaint, ¶¶ 337–39).

Based upon these allegations, and after considering the factors enumerated *supra*, the Court finds that Plaintiff has sufficiently alleged facts to establish a prima facie showing of intentional interference with contractual relations, and therefore Defendants' motion to dismiss as to Count 3 is denied.

## MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff has filed a motion for judgment on the pleadings based upon Defendants' alleged willingness to accept the allegation of Plaintiff's complaint as true. Plaintiff contends that because Defendants represented in their motion to dismiss that for purposes of that motion they would be willing to accept the allegations in the complaint as true, Defendants have conceded that they infringed upon Plaintiff's trademark and, based upon the *Intel* case this Court can enter judgment on that issue.

Defendants claim that Plaintiff's motion is untimely because they have not yet filed an answer. Further, Defendants contend that Plaintiff's reliance upon Defendants' alleged acceptance of the complaint as true is erroneous in that Defendants were merely restating the standard for a motion to dismiss for failure to state a claim upon which relief could be granted. Finally, Defendants contend that Plaintiff misrepresents the *Intel* case, and therefore judgment on the pleadings is not warranted at this time.

Rule 12(c) of the Federal Rules of Civil Procedure states:

**Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

■ In a Rule 12(c) motion for judgment on the pleadings, the moving party must show that there are no material issues of fact to be resolved and that it is entitled to judgment as a matter of law. *Bryant v. Food Lion, Inc.,* 774 F.Supp. 1484, 1489 (D.S.C. 1991); *General Conf. Corp. v. Seventh–Day Adventist Ch.,* 887 F.2d 228, 230 (9th Cir. 1989), *cert. denied,* 493 U.S. 1079, 110 S.Ct. 1134, 107 L.Ed.2d 1039 (1990). The non-moving party's factual allegations must be taken as true, and all reasonable inferences must be made and all doubts resolved in favor of the non-moving party. *Id.*

Clearly Plaintiff's motion is premature. This Court cannot take the non-moving party's, i.e. Defendants, factual allegations as true because Defendants have not yet filed an answer. This Court therefore does not even know what Defendants' factual allegations are. The Court cannot determine if there is a material issue of fact when only one set of facts have been presented to the Court.

Further, Plaintiff's assertions regarding Defendants' alleged assumption that the facts in the complaint are true is without merit. Under the standard for a Rule 12(b)(6) motion, stated *supra,* the Court is to assume the facts in the complaint are true, and that as a matter of law that party has failed to state a claim for relief. Simply because Defendants "assume" the facts in the complaint to be true for purposes of a Rule 12(b)(6) motion does not mean that Defendants admit that the allegations in the complaint are true for all purposes. If the Court accepted Plain-

tiff's position, the Court would have to enter judgment for every plaintiff after denying a defendant's motion to dismiss.

Because Plaintiff's motion is premature, and because Plaintiff's assumption that Defendants have admitted all the allegations contained in the complaint is erroneous, the Court will deny Plaintiff's motion for judgment on the pleadings.

In accordance with the foregoing,

IT IS ORDERED denying Defendants' Motion to Dismiss [Doc. # 4].

FURTHER ORDERED denying Plaintiff's Motion for Judgment on the Pleadings [Doc. # 7].