**COLONIAL LIFE & ACCIDENT INSURANCE COMPANY and UMass Memorial Health Care, Inc., Plaintiffs,**

v.

**Malcolm S. MEDLEY, Martin S. Ebel, and Sunila Thomas–George, in their official capacities as Commissioners of the Massachusetts Commission Against Discrimination; Commonwealth of Massachusetts; and Carolyn Calderon, Defendants.**

**Civil Action No. 08–40010–FDS.**

United States District Court, D. Massachusetts.

Sept. 30, 2008.

Richard C. Van Nostrand, Jessica H. Munyon, Mirick, O'Connell, Demallie & Lougee, LLP, Worcester, MA, for Plaintiffs.

Kenneth W. Salinger, Massachusetts Attorney General's Office, Susan D. Fendell, Mental Health Legal Advisors Committee, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS OR MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANTS' CROSS-MOTIONS TO DISMISS

SAYLOR, District Judge.

This is an action to enjoin an investigation of discrimination by a state agency on the grounds of ERISA preemption. Plaintiff Colonial Life & Accident Insurance Company issued a short-term disability plan for employees of plaintiff UMass Memorial Health Care, Inc., as part of the latter's employee benefit package. Defendant Carolyn Calderon is a UMass Memorial employee who purchased a Colonial short-term disability plan. Defendants Malcolm S. Medley, Martin S. Ebel, and Sunila Thomas–George are Commissioners of the Massachusetts Commission Against Discrimination ("MCAD").

In 2007, Calderon submitted a claim for benefits based on short-term mental disability and was denied on the ground that the policy did not cover disability due to psychological or psychiatric conditions. She filed a discrimination claim with the MCAD in November 2006, contending that the denial of short-term disability benefits to individuals with mental disabilities is unlawful under state and federal law. The MCAD has begun an investigation of that discrimination charge.

Plaintiffs seek to enjoin the MCAD investigation on the grounds that it is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Defendants contend that the Court should abstain from exercising jurisdiction over plaintiffs' claim pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and should defer to the ongoing MCAD proceeding and any resulting appeal, where plaintiffs may raise ERISA preemption as a defense. For the reasons set forth below, the Court will grant plaintiffs' motion for preliminary injunction, deny plaintiffs' motion for judgment on the pleadings, and deny defendants' cross-motions to dismiss.

## I. Background

Defendant UMass Memorial has established and maintains an employee benefit plan for the purpose of providing certain employees with various benefits, including short-term disability coverage. UMass Memorial employees may apply for and receive short-term disability insurance issued by Colonial as part of the employee benefit package. The policy issued by Colonial specifically excludes coverage for disability caused by psychiatric and psychological conditions.

Carolyn Calderon is a UMass Memorial employee who purchased short-term disability coverage from Colonial on January 1, 2007. On May 15, 2007, Calderon submitted a claim for benefits under the policy

for the period from May 8, 2007 through August 1, 2007, during which she was unable to work due to disability. The cause of Calderon's disability was major depression, grief reaction, and panic disorder. By letter dated May 20, 2007, Colonial informed Calderon that it had denied her claim for benefits pursuant to the policy exclusion for psychiatric or psychological conditions.

On November 26, 2007, Calderon filed a charge of discrimination with the MCAD against both UMass Memorial and Colonial. In her complaint, Calderon claimed that, by refusing to provide short-term disability coverage for psychiatric or psychological disabilities, plaintiffs had violated Massachusetts' anti-discrimination laws, Mass. Gen. Laws ch. 151B, § 4 and ch. 272, §§ 92A, 98, and 98A, as well as the federal Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* and 42 U.S.C. § 12182(b)(1)(A)(iii). On November 30, 2007, the MCAD began an investigation of Calderon's charge. That investigation remains pending.

On January 23, 2008, plaintiffs filed a complaint in this Court seeking declaratory judgment and injunctive relief. They simultaneously moved for judgment on the pleadings and for a preliminary injunction, contending that the MCAD's investigation into state law violations is preempted by ERISA. On April 1, 2008, the MCAD defendants opposed plaintiffs' motions and cross-moved to dismiss the complaint based on the *Younger* doctrine. Likewise, on April 2, defendant Calderon cross-moved to dismiss plaintiffs' complaint, arguing that ERISA preemption is inapplicable in this matter and urging the Court to abstain from assuming jurisdiction over the case pursuant to *Younger.*

## II. *Analysis*

■■■ Plaintiffs request that the Court (1) enjoin the MCAD from continuing its investigation of Calderon's discrimination claims and (2) declare that the applicable Massachusetts anti-discrimination laws are preempted by ERISA and, accordingly, that the MCAD does not have jurisdiction to address those claims. It is well-settled that state agencies lack jurisdiction to enforce state laws against benefit plans if the law they seek to enforce is preempted by ERISA. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 102–04, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA preempts state law causes of action "insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Accordingly, if the plan at issue is a plan covered by ERISA and the claim asserted relates to that plan, preemption applies and the state action may not proceed. *McMahon v. Digital Equip. Corp.,* 162 F.3d 28, 36 (1st Cir.1998).

Defendants counter that under the *Younger* doctrine, the Court should abstain from adjudicating this action and should instead permit the MCAD to address plaintiffs' preemption arguments. *See Younger v. Harris,* 401 U.S. 37, 43, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Furthermore, defendants contend that ERISA does not preempt federal anti-discrimination laws, and that, to the extent that Massachusetts' anti-discrimination laws prohibit practices that are also prohibited under federal law, state law is not preempted. *See* 29 U.S.C. § 1144(d); *Shaw,* 463 U.S. at 103, 103 S.Ct. 2890.

Because the *Younger* abstention issue is dispositive here, the Court will address that issue first. *See Local Union No. 12004, United Steelworkers of Am. v. Massachusetts,* 377 F.3d 64, 76 n. 11 (1st Cir. 2004) ("Ordinarily, the *Younger* question must be decided before decision on the merits of the underlying claim.").

## A. *The Younger Doctrine*

 Under the principles established in *Younger v. Harris,* federal courts should not generally enjoin or otherwise interfere with certain ongoing state proceedings. 401 U.S. at 41, 91 S.Ct. 746 (citing a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances"); *see also Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 629, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). *Younger* abstention arises from policies of comity and federalism that "counsel against the exercise of jurisdiction where particular kinds of state proceedings have already commenced." *Id.* at 626, 106 S.Ct. 2718; *see also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). The doctrine applies not only where there are ongoing proceedings in state court, but also where there are "state administrative proceedings that are quasi-judicial in character and implicate important state interests." *Maymo–Melendez v. Alvarez–Ramirez,* 364 F.3d 27, 31 (1st Cir.2004) (citing *Dayton,* 477 U.S. at 627 n. 2, 106 S.Ct. 2718). Where a federal court finds *Younger* abstention applicable, the plaintiff's cause of action should be dismissed, and the plaintiff must raise its federal claims and defenses in the administrative proceedings or "in state-court judicial review of the administrative proceeding." *Dayton,* 477 U.S. at 629, 106 S.Ct. 2718; *see also Huffman v. Pursue, Ltd.,* 420 U.S. 592, 605, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (stating that a civil litigant can "seek review in [the Supreme Court] of any federal claim properly asserted in and rejected by state courts."); *Casa Marie, Inc. v. Superior Ct. of Puerto Rico,* 988 F.2d 252, 263 n. 10 (1st Cir.1993) (noting that a federal plaintiff in the state court will also have available "discretionary appellate review by the United States Supreme Court as a last resort").

 Pursuant to the *Younger* doctrine, a federal court should abstain from exercising jurisdiction over ongoing state proceedings where three conditions are satisfied: "(1) the proceedings are judicial (as opposed to legislative) in nature; (2) they implicate important state interests; and (3) they provide an adequate opportunity to raise federal constitutional challenges." *Bettencourt v. Board of Registration in Med.,* 904 F.2d 772, 777 (1st Cir.1990). The parties here do not dispute that the first and third conditions for *Younger* abstention have been met. There is no dispute that the MCAD proceedings at issue are judicial in nature. *See Brotherhood of Locomotive Eng'rs v. MCAD,* 695 F.Supp. 1321, 1322 (D.Mass.1988). Likewise, the parties do not dispute that the MCAD proceedings provide an adequate opportunity to raise federal constitutional challenges. *Id.* at 1323. *See Dayton,* 477 U.S. at 629, 106 S.Ct. 2718. The parties, however, vigorously dispute the second condition—namely, whether the state proceedings implicate important state interests.

 When considering the magnitude of a state's interest in its administrative proceedings, a court does "not look narrowly to [the State's] interest in the *outcome* of the particular case," but looks to "the importance of the generic proceedings to the State." *New Orleans Pub. Serv., Inc., v. Council of New Orleans,* 491 U.S. 350, 365, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (hereafter *"NOPSI"*). The Supreme Court has recognized that prohibiting employers from engaging in unlawful discrimination is a "sufficiently important state interest" to warrant a federal court's abstention pursuant to *Younger. Dayton,* 477 U.S. at 628, 106 S.Ct. 2718 (finding *Younger* abstention appropriate where the federal plaintiff sought to enjoin the state's

375 of a page

administrative proceeding on the basis that the investigation of a gender discrimination complaint would violate the First Amendment's Free Exercise and Establishment clauses). However, even where the state's proceedings implicate important state interests, there are several exceptions to the application of the *Younger* doctrine, one of which plaintiffs contend applies here: the "facially conclusive" exception to the *Younger* doctrine.

### B. The "Facially Conclusive" Exception to the Younger Doctrine

■ Although the Supreme Court has found *Younger* abstention appropriate even where a federal plaintiff brings a *substantial* claim of federal preemption, it has left open the possibility that abstention may be inappropriate where the plaintiff brings a *facially conclusive* claim. *NOPSI*, 491 U.S. at 367, 109 S.Ct. 2506. The First Circuit has "endorsed the existence of this 'facially conclusive' preemption exception to *Younger*." *Local Union No. 12004*, 377 F.3d at 78. The rationale behind this exception is that there is no significant state interest at issue "when it is clear that the state tribunal is acting beyond the lawful limits of its authority." *Chaulk Servs., Inc., v. MCAD*, 70 F.3d 1361, 1370 (1st Cir.1995). However, the somewhat divergent outcomes of the two leading First Circuit cases addressing the "facially conclusive" exception to *Younger* illustrate the complexity of this issue.

In *Chaulk Services*, the First Circuit held that abstention was inappropriate where a federal plaintiff sought to enjoin the MCAD's investigation of a gender discrimination claim that arose from conduct during a union-organizing campaign. 70 F.3d at 1370–71. The plaintiff argued that the National Labor Relations Act preempted the state action. Agreeing with plaintiff, the court noted that the argument for

abstention was particularly weak. Congress anointed the NLRB as the "chief arbiter of labor disputes" and, when the MCAD gender discrimination charges were filed, there was already pending before the NLRB an unfair labor practice charge based on the same underlying facts. *Id.* at 1368–71. Allowing the MCAD complaint to go forward under those circumstances would threaten the uniformity in national labor policy that the Supreme Court sought to protect with the preemption doctrine it first announced in *San Diego Building Trades v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *Garmon* preemption requires deference to the exclusive competence of the NLRB where activity that is even arguably subject to the NLRA is at issue. *Chaulk Servs.*, 70 F.3d at 1364. Application of *Garmon* preemption principles made it "facially conclusive" or "readily apparent" that the MCAD was "acting beyond its jurisdictional authority." *Id.* at 1370. Thus, the court held that *Younger* abstention was inappropriate. *Id.* at 1371.

In contrast, in *Local Union No. 12004*, the First Circuit noted that *Younger* abstention might be appropriate in an action brought under facts very similar to *Chaulk Services*: a supervisor filed charges of discrimination on the basis of sexual orientation with the MCAD premised on conduct that occurred during a labor dispute. 377 F.3d at 69. The First Circuit remanded the case for further proceedings on the issue of *Younger* abstention because, unlike *Chaulk Services*, no party had invoked the primary jurisdiction of the NLRB. The Court reasoned that, if the plaintiff had chosen for strategic reasons not to go to the NLRB, then the application of the *Garmon* doctrine to divest the MCAD of any jurisdiction was less definitive. *Id.* at 80. The First Circuit concluded that the plaintiff's argument for applying the "facially conclusive" exception to *Younger* ab-

stention was weaker where the "rationale for *Garmon* preemption [was] less powerful." *Id.*

The difficulty, then, is determining when it is "facially conclusive" from the claims in the complaint that the state's action is preempted by federal law. In addition, there is some question as to how extensively the Court may inquire into the issues before it moves out of the parameters of "facially conclusive." The Supreme Court has stated that "what requires further factual inquiry can hardly be deemed 'flagrantly' unlawful for the purposes of a threshold abstention determination." *NOPSI*, 491 U.S. at 367, 109 S.Ct. 2506. Along this line of reasoning, defendants contend that unsettled questions of law must be presented to and decided by the MCAD, not by this Court.[1] *See Woodfeathers, Inc., v. Washington County*, 180 F.3d 1017, 1021–22 (9th Cir. 1999) (holding that the issue of preemption is not readily apparent where there is a question of first impression, but is readily apparent "where the state law fell under the express preemption clause" of ERISA); *Schlagler v. Phillips*, 166 F.3d 439, 443 (2d Cir.1999) (stating that a broad interpretation of limited exceptions would "swallow the *Younger* rule"); *GTE Mobilnet of Ohio v. Johnson*, 111 F.3d 469, 478 (6th Cir.1997) (finding the issue of preemption not "facially conclusive" where the court would have to "enter into a detailed analysis of state law" to determine if state law regulating cellular phone service was preempted by the Federal Communications Act). *But see Partners Healthcare Sys., Inc. v. Sullivan*, 497 F.Supp.2d 29, 40 (D.Mass.2007).

However, the issue of ERISA preemption of state laws is hardly a novel one. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (holding that ERISA preempts state statute revoking the designation of a spouse as beneficiary of a pension plan after a divorce); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 526, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (holding that ERISA preempts state statute outlawing the offsetting of pension payments by amount received in workers' compensation awards). Moreover, as noted earlier, the issue of ERISA preemption of state anti-discrimination laws was directly addressed by the Supreme Court in *Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (holding that ERISA preempted part of the state's human rights law). Even if the Court were to consider this issue novel, "it must be wholly appropriate for this [C]ourt to weigh [the] arguments and to determine the scope of preemption" and of federal anti-discrimination law. *Partners Healthcare*, 497 F.Supp.2d at 40 (stating that though abstention may be appropriate where the facts are unclear, the court must not shirk its responsibility to adjudicate claims within its jurisdiction "simply because the law is complicated or novel").

Pursuant to *Shaw*, a court must determine whether alleged employment practices are prohibited by federal law: "[i]f they are not, the state law will be superseded and the agency will lack authority to act." *Id.* at 105–06, 103 S.Ct. 2890. Thus, if the Court determines that the ADA does not prohibit disability plans from discrimi-

---

1. Defendants contend that any "facially conclusive" preemption exception must be applied very narrowly. *See Hughes v. Attorney Gen. of Fla.*, 377 F.3d 1258, 1265 (11th Cir. 2004). The argument follows that if the Court broadly construes the "facially conclu-

sive" exception, it would effectively erode *NOPSI's* holding that *Younger* abstention is appropriate even when federal courts are faced with "substantial" claims that a state proceeding is preempted by federal law. *See NOPSI*, 491 U.S. at 364–66.

nating between physical and mental disabilities, then Chapter 151B is preempted with respect to ERISA disability benefit plans.

## C. *ERISA and the ADA*

 "Congress enacted ERISA in 1974 in order 'to promote the interests of employees and their beneficiaries in employee benefit plans,'" as well as to "safeguard employers' interests by 'eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans.'" *McMahon*, 162 F.3d at 35–36 (quoting *Shaw*, 463 U.S. at 90, 99, 103 S.Ct. 2890). Although ERISA expressly preempts all state laws that "relate to" employee benefit plans, 29 U.S.C. § 1144(a), the statute also explicitly prohibits "[a]lteration, amendment, modification, invalidation, impairment, or supersedure of any law of the United States," 29 U.S.C. § 1144(d). Construing these two subsections together and seizing on the warning against "impairment" of federal law, the Supreme Court has concluded that § 1144(d) exempt's from preemption "provisions of state laws upon which federal laws depend for their enforcement." *Shaw*, 463 U.S. at 104, 103 S.Ct. 2890. Federal law is not impaired, however, by preemption of state law prohibiting practices that are lawful under federal law. *Id.* at 103, 103 S.Ct. 2890. Thus, state laws relating to ERISA plans are not preempted, in this context, to the extent that they are consistent with federal law.

 Applying these principles to this matter, exemption from ERISA preemption is at least theoretically possible because the ADA is a federal law that depends on state law for its enforcement. The First Circuit has held that "the ADA, like Title VII, contemplates that state laws will contribute to the overall federal enforcement regime." *Tompkins v. United Healthcare of New Eng., Inc.*, 203 F.3d 90, 96 (1st Cir.2000); *see also Jorgensen v. Mass. Mut. Life Ins. Co.*, 2001 U.S. Dist. LEXIS 19579, at *23, 2001 WL 1736636, *4–5 (D.Mass. Nov. 27, 2001) ("[S]ome state law claims are exempt from ERISA preemption if they are a necessary part of a federal enforcement scheme under statutes like Title VII or the ADA."). Therefore, Mass. Gen. Laws ch. 151B is exempt from ERISA preemption if discrimination between classes of disabled persons is prohibited by the ADA. *Tompkins*, 203 F.3d at 96–97 (stating that "if the ... state statutory claims targeted conduct [that is] unlawful under the ADA, those state claims would be exempt from ERISA preemption"). Accordingly, the Court must determine whether the ADA prohibits the discrimination alleged here.

Title III of the ADA prohibits discrimination between disabled individuals and other individuals in the provision of goods or services by any person who owns or operates a "place of public accommodation." 42 U.S.C. § 12182(a) & (b)(1)(A)(iii).[2] The First Circuit, unlike

---

**2.** Defendants' MCAD complaint alleges violations of "Part II" of the ADA but cites the section of the United States Code corresponding to Title III of the ADA. (Pl. Compl., Ex. 1 at 2). Section 12182(a) provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or

operates a place of public accommodation." 42 U.S.C. § 12182(a).

Section 12182(b)(1)(A)(iii) of the ADA generally prohibits the provision of separate benefits, stating that "[i]t shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is

other circuits, has determined that a "public accommodation" under the ADA can include employee benefit plans under certain circumstances. *Tompkins,* 203 F.3d at 95 n. 4 (citing *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's,* 37 F.3d 12 (1st Cir.1994) (holding that "public accommodations" can include health care plans)); *Fletcher v. Tufts University,* 367 F.Supp.2d 99, 115 (D.Mass.2005) (same). *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1114 (9th Cir.2000) (limiting "public accommodations" to places); *Ford v. Schering–Plough Corp.,* 145 F.3d 601, 612–13 (3d Cir.1998) (same); *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1010–11 (6th Cir.1997) (same). Moreover, the First Circuit has stated that "the discriminatory denial of benefits under a health care plan might, in some circumstances, state a claim under Title III of the ADA." *Tompkins,* 203 F.3d at 95 n. 4.

Nonetheless, the First Circuit has left open the question whether Title III "is intended merely to provide access to whatever product or service the subject entity may offer, or is intended in addition to shape and control which products and services may be offered." *Carparts,* 37 F.3d at 19. *But see Weyer,* 198 F.3d at 1115 (stating that the Third and Sixth Circuits have "held that 'Title III does not govern the content of a long-term disability policy offered by an employer.'" (quoting *Parker,* 121 F.3d at 1012)). At least one court in this Circuit has applied Title III's prohibitions to the contents of a short-term disability plan, such as the one at issue here. *Conners v. Maine Med. Ctr.,* 42 F.Supp.2d 34, 46 (D.Me.1999) (finding that because "public accommodation" includes

medical benefits plans, then "under the plain language of Title III, the [ADA] would extend to the substance or contents of an insurance policy").

Even assuming that the anti-discrimination prohibitions of the ADA were intended to apply to the contents of short-term disability plans, the question remains as to whether *any* provision of the ADA requires that individuals with mental disabilities receive the same benefits as individuals with physical disabilities under the same employee benefit plan. Most circuits that have addressed this issue have found conclusively that the ADA does not prohibit "discrimination" between different classes of disabilities. *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1116–18 (9th Cir.2000) (holding that the ADA does require parity of coverage between mental and physical disabilities in case involving claims brought for violations of both Title I and III of the ADA); *McNeil v. Time Ins. Co.,* 205 F.3d 179, 188 (5th Cir.2000) (holding that Title III does not prohibit the offering of different goods and services to disabled persons, only denial of equal access to those goods and services); *Parker v. Metropolitan Life Ins. Co.,* 121 F.3d 1006, 1019 (6th Cir.1997) (holding, in suit under Title III, that ADA does not prohibit discrimination between different types of disabilities). *See EEOC v. Staten Island Sav. Bank,* 207 F.3d 144, 148 (2d Cir.2000) (holding that Title I of ADA does not bar entities from offering different benefits for mental disabilities than for physical ones); *Kimber v. Thiokol Corp.,* 196 F.3d 1092, 1101 (10th Cir.1999) (same); *Lewis v. Kmart Corp.,* 180 F.3d 166, 170 (4th Cir.1999) (same); *Ford v. Schering–Plough Corp.,* 145 F.3d 601, 610

different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege,

advantage, or accommodation, or other opportunity that is as effective as that provided to others." 42 U.S.C. § 12182(b)(1)(A)(iii).

(3d Cir.1998) (same); *EEOC v. CNA Ins. Cos.*, 96 F.3d 1039, 1044 (7th Cir.1996). *Johnson v. K Mart Corp.*, 273 F.3d 1035 (11th Cir.2001) (concluding that such disparity in disability coverage constitutes unlawful discrimination prohibited by Title I because it imposes a benefits limitation that is contingent on the kind of disability the former employee has), *vacated pending reh'g en banc*, 273 F.3d 1035, 1070 (11th Cir.2001) (decision suspended as a result of the automatic stay imposed by Kmart Corp.'s bankruptcy petition).

The First Circuit has not addressed this issue. *Iwata v. Intel Corp.*, 349 F.Supp.2d 135, 148 (D.Mass.2004); *El–Hajj v. Fortis Benefits Ins. Co.*, 156 F.Supp.2d 27, 32 (D.Me.2001); *Wilson v. Globe Specialty Products, Inc.*, 117 F.Supp.2d 92, 95 (D.Mass.2000) (stating that the First Circuit has neither condoned nor condemned "different benefits for different disabilities"). Within the Circuit, there is division on whether the ADA prohibits discrimination between mental and physical disabilities in employee benefit plans. *Compare Wilson*, 117 F.Supp.2d at 96; *Conners v. Maine Med. Ctr.*, 42 F.Supp.2d 34, 55 (D.Me.1999); *Witham v. Brigham & Women's Hosp., Inc.*, 2001 WL 586717 (D.N.H. May 31, 2001); *with Iwata v. Intel Corporation*, 349 F.Supp.2d 135 (D.Mass. 2004) (Young, J.) ("finding that the ADA prohibits discrimination among classes of individuals with disabilities"); *Fletcher v. Tufts University*, 367 F.Supp.2d 99 (D.Mass.2005) (Lindsay, J.) (adopting Judge Young's reasoning in *Iwata*); *Boots v. Northwestern Mutual Life Ins. Co.*, 77 F.Supp.2d 211 (D.N.H.1999).

In finding that the ADA prohibits discrimination "amongst classes of the disabled," the court's opinion in *Iwata* followed the reasoning of the Eleventh Circuit in *Johnson*. 349 F.Supp.2d at

148.[3] First, the Court recognized that remedial statutes should be given broad construction. Next, the court determined that, though Congress did not intend to prohibit discrimination between disabilities in health plans, such an intent did not exist for disability benefit plans. The court noted that the legislative history of the ADA refers to health plans, not to benefit plans, and that the basis for differential coverage under health plans rested on actuarial principles, whereas under benefit plans, the basis for differential coverage lacked any such objective standard. *Id.* at 150–51. Also, the court found support for its holding in the fact that congressional action after the passage of the ADA has focused on providing parity among disabilities in coverage under *health* plans, not disability plans. *Id.* at 152–53.

A central factor in the reasoning of *Iwata* was the Supreme Court's decision in *Olmstead v. L.C.*, 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999), which held that Title II of the ADA required a state to place individuals with mental disabilities in community settings instead of institutions. Judge Young concluded that *Olmstead* created a "new conception of discrimination" under the ADA: not only does the ADA prohibit discrimination between the disabled and the non-disabled, but also "amongst classes of the disabled." *Id.* at 149. Moreover, the court found that the *Olmstead* decision abrogated earlier Supreme Court cases that held that the Rehabilitation Act, a statute that mirrors the ADA, does not require "that any benefit extend to one category of handicapped persons also be extended to all other categories of handicapped persons." *Iwata*, 349 F.Supp.2d at 149 (citation omitted). The totality of the arguments, the court

**3.** As noted, the opinion in *Johnson* was later vacated pending a rehearing *en banc*.

concluded, supported the finding that the ADA prohibits discrimination among classes of disabilities.

In contrast, the court in *Wilson* found that the ADA does not prohibit "different benefits for different disabilities." 117 F.Supp.2d at 95. First, the Court noted that "the circuit law on the subject overwhelmingly supports this conclusion." *Id.* at 96 (citing eight circuit court cases holding that the ADA does not prohibit discrimination between different disabilities). Second, the ADA's legislative history supports such a conclusion, as the House and Senate reports state that insurance policies may limit coverage for different treatments—including setting limits for mental health coverage—as long as disabled individuals have the same access to health insurance as is generally provided by employers to their employees. Third, the language of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, which parallels the ADA, and the Supreme Court's conclusion that the Rehabilitation Act does not require parity among disabilities, support the conclusion that the ADA also does not require such parity. Fourth, various attempts in Congress to pass legislation that would expressly prohibit discrimination in health insurance between individuals with mental disabilities and those with physical disabilities strongly suggest that the ADA does not currently prohibit such discrimination.

Finally, the court in *Wilson* determined that *Olmstead* did not "alter[ ] the legal landscape." *Id.* at 97. It concluded that the holding of *Olmstead* was limited to its

facts: the case dealt with Title II of the ADA and the issue of reasonable accommodation by public entities. Although a footnote in *Olmstead* noted past decisions in which the term discrimination "encompassed disparate treatment among members of the *same* protected class," the court in *Wilson* found the footnote had no greater significance other than rebutting the dissent. *Id.* Ultimately, the court concluded that *Olmstead* did not address the "[d]isparate treatment of different disabilities." *Id.*

■ After considering the rationale behind both positions, this Court finds the conclusion and reasoning of the court in *Wilson* substantially more compelling. Moreover, that conclusion makes considerable practical sense. If Congress had intended parity between mental and physical disabilities in the provision of employee benefit plans, it surely would have specified that desire more clearly, rather than rely on a tortuous inference from statutory language. *See McNeil*, 205 F.3d at 186–87. Thus, the Court concludes that the ADA does not prohibit discrimination among different disabilities in employee benefit plans.

■ In summary, because the Court finds that the ADA does not prohibit discrimination between mental and physical disabilities in the provision of short-term disability benefits, defendants' claims under Ch. 151B are preempted under ERISA. And because the Court finds that the issue of ERISA preemption is "facially conclusive," *Younger* abstention does not apply.[4]

---

**4.** Defendants also contend that *Younger* abstention is inappropriate because the Court must engage in additional fact-finding to determine whether the state action is preempted. If an employer pays for what would otherwise be ERISA benefits out of general assets (that are not governed by ERISA) rath-er than out of an accumulated fund (that is subject to ERISA requirements) then state law may regulate those benefits without being subject to preemption. *See Massachusetts v. Morash*, 490 U.S. 107, 115–16, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). The MCAD charge here does not, on its face, es-

### D. Motion for Preliminary Injunction

The Court must weigh four factors in determining whether to issue a preliminary injunction: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir.2004). Though the "sine qua non of this four-part inquiry is likelihood of success on the merits," *New Comm Wireless Services, Inc., v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir.2002), the Court must "weigh and measure each factor against the other factors," *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed.Cir.1988).

The Court's consideration of the four factors is relatively straightforward. As detailed above, plaintiffs have established a likelihood of success on the merits, as MCAD may not require the plan to pay benefits for short-term mental health disability. The Court finds that plaintiffs will suffer irreparable injury if the MCAD continues its investigation into a discrimination complaint when it lacks jurisdiction over the matter. The Court further finds that the hardship to plaintiffs substantially outweighs that of the defendants. Finally, the Court concludes that the preliminary injunction will further the public's interest in maintaining cohesive and consistent regulation of ERISA plans. Accordingly, the MCAD defendants will be preliminarily enjoined from investigating or adjudicating the question whether plaintiffs' ERISA benefit plan violates Mass. Gen. Laws ch. 151B because it does not provide short-term mental health benefits to plan beneficiaries.[5]

### E. Motion for Judgment on Pleadings

As noted, the Court has concluded that it need not abstain from deciding this case on the basis of *Younger* abstention, and that Mass. Gen. Laws ch. 151B is preempted to the extent that it is being applied to an ERISA benefit plan. Nonetheless, plaintiffs' motion for judg-

tablish that plaintiffs' short-term disability coverage is part of an ERISA plan. Defendants contend that additional facts are needed to determine whether there is merit to plaintiffs' contention that the charge concerns a plan covered by ERISA. Plaintiffs contend, however, that no further factual development is required in order to determine whether ERISA preemption is appropriate. Specifically, plaintiffs contend that it is an undisputed fact that Calderon purchased the short-term disability coverage at issue with her own money—meaning that UMass Memorial did not fund the Colonial short-term disability policy with general assets, which would exempt it from ERISA coverage.

The Court need not resolve this dispute to reach its conclusion. "Such factual inquiry [into the ERISA status of plaintiff's plan] is collateral to the issue presented here, and need not be conducted in federal court." *Partners Healthcare*, 497 F.Supp.2d at 41. At this stage of the proceedings, in deciding a motion for preliminary injunction, the Court finds only that the portion of the MCAD investigation applying state anti-discrimination law to a plan covered by ERISA is preempted. *See id.* If further factual investigation before the MCAD, or future discovery in this action, reveals that the plan at issue here is in fact not covered by ERISA, the preliminary injunction will be modified accordingly. As in Partners Healthcare, however, the MCAD is advised to be "cognizant of this [C]ourt's order to cease any investigation once it concludes a plan is an ERISA plan." *Id.*

5. The preliminary injunction will be contingent upon the posting of a bond of $25,000 as security in accordance with the requirements of Fed.R.Civ.P. 65(c).

ment on the pleadings is premature as defendants have not yet answered the complaint. Fed.R.Civ.P. 12(c) allows motions for judgment on the pleadings only "[a]fter the pleadings are closed." As the First Circuit has pointed out, "The rule expressly provides that such relief can be sought only 'after the pleadings are closed.' Pleadings, of course, include an answer to the complaint." *Figueroa v. DEA,* 66 F.3d 306, 1993 WL 794229, *1, 1993 U.S.App. LEXIS 26504, at *2 (1st Cir. Oct. 12, 1993) (per curiam); *see also Karsten Mfg. Corp. v. Oshman's Sporting Goods, Inc.-Services,* 869 F.Supp. 778, 783 (D.Ariz.1994) (finding plaintiff's motion for judgment on the pleadings premature where defendants had not yet filed an answer). Accordingly, the Court will deny plaintiffs' motion for judgment on the pleadings at this time.

### III. *Conclusion*

For the foregoing reasons plaintiffs' motion for judgment on the pleadings is DENIED, plaintiffs' motion for a preliminary injunction is GRANTED, and defendants' cross-motions to dismiss are DENIED.

A separate form of preliminary injunction order will be entered by the Court. **So Ordered.**